Lee, J.
The various objections which have been urged in this case as grounds of error for which the judgment should be reversed, may be resolved into three. These are,
*530 1. That the Circuit court erred in permitting the record of the decree for the sale of the ten thousand acres of land granted to Hugh Lenox, as forfeited, and of the subsequent proceedings by which the commissioner was directed to make the conveyance of the same to Dundas and Kugler, together with the deed so made by him to them, to be read in evidence to the jury though objected to by the plaintiff in error.
2. That the court erred in refusing to permit the plaintiff in error to show that notwithstanding the decree for the sale of the land as forfeited, it was at the time in point of fact not forfeited under the law and not therefore liable to be sold as such.
3. That the declaration and verdict were both defective and insufficient and no judgment could properly be rendered for the plaintiff upon them.
In support of the first of these objections several reasons have been urged by the counsel in argument.
It is said that the order for the sale was made at an intermediate term of the court, and was a nullity because the court had no power at such a term to make an order of that kind.
The act of 1819, 1 Rev. Code, ch. 69, § 74, p. 243, provides that the courts at such intermediate terms might hear and determine all motions cognizable by them whether the same were depending and could have been tried at the previous term or not. And the same provision is found in the act concerning Circuit superior courts of the 16th of April 1831. Supp. Rev. Code, p. 157, § 61. And wffiile the reasons which forbade the trial of cases that could not have been tried at the previous term could have no application to proceedings under the laws concerning delinquent and forfeited lands, it might be doing no violence to the spirit or language of the act to include ex parte proceedings of that character under the general and comprehensive term “ motions.” But it will be observed *531 that by the sixth section of the act of March 15,1838, the judges of the Circuit courts had the power to act upon the reports of the commissioners and to order sales, in vacation as well as in term, and it would seem difficult to hold that what the judge might certainly do in vacation he could not do at an intermediate term. If under a strict construction of the act, the court had not cognizance of these proceedings as a “motion,” •why may not its action be regarded as the action of the judge in vacation after he has signed the order? To say that his order is upon the record book and not upon the report of the commissioner savors too much of nicety and sticking in the bark.
But there is another answer to the objection, and that is that although the order for the sale was made at an intermediate term, yet the confirmation of the sale and all the subsequent proceedings in relation to the subject were had at regular terms of the court. And if there had been an irregularity in making the order for the sale at an intermediate term, I think it should be regarded as abundantly cured by the subsequent ratification and the proceedings afterwards had at the regular terms.
But it is said that the record of these proceedings was deprived of the character of legal evidence because it appeared from its face that the land was not in fact forfeited, that the case was coram non jndice and the decree of sale and the proceedings under it were merely void.
The position taken by the counsel is that as this land was conveyed by Lenox to Hollingsworth as early as in the year 1794, the assessment in the name of Lenox for the years from 1801 to 1814 was illegal, and there could be no forfeiture for the failure to pay the taxes so illegally assessed.
It may not follow as a necessary consequence that an assessment of taxes upon a tract of land would in *532 every case be illegal and void because the land had been previously conveyed to another by the party in name it was so assessed. But concede for the gake fljg argument, that this land was improperly charged to Lenox after his conveyance to Hollingsworth, the position assumed is not made good. If the assessment in the name of Lenox is to be repudiated, there was no assessment of these lands in the name of any one before or after 1814, because the report ascertains that it had never been entered for taxation on the commissioner’s books by any of the grantees claiming under Lenox; and it would then fall in the category of omitted land, as to which the provisions of the act of 1835 and subsequent laws had not been complied with. Thus, the report of the commissioners and the proceedings had upon it, quacunque via data, showed that this land was forfeited and liable to be sold. If the assessment in the name of Lenox was good, then the taxes had not been paid and the land was forfeited for the delinquency. If it was not good then the land had been entirely omitted from the books after the year 1794, and was liable to sale as forfeited for that cause. That the proceeding looked to a forfeiture for delinquency and not for omission from the books is not material to this enquiry. The question is of forfeiture or no forfeiture upon the face of the record and does not concern the regularity of the proceeding to enforce it.
Various irregularities are alleged to have occurred in the proceedings, the effect of which it is contended is to i’ender the whole a mere nullity. It is said that the court had no power to direct a deed to be made to any other person than the purchaser, and the case of Walton v. Hale, 9 Gratt. 194, is cited to prove that the commissioner, who it is assumed has all the power on this subject that the court possesses, cannot execute the deed to a third person. The error in this consists *533 in giving to the commissioner the whole power of the court. His duty is to obey the mandate of the latter, and without its order he can only convey to the purchaser. But the court might in the exercise of its ordinary powers direct the deed to be made to a third person. Whether that should be by bill, or by petition (as in this case), or on motion cannot be material to this enquiry. The court has jurisdiction to order the deed to be made to the party shown to be entitled to it, and whether that jurisdiction have been exercised with due regularity and formality, is a matter which a stranger certainly in a collateral proceeding cannot be permitted to enter into. As to him at least, factum valet, fieri non debet. And the same answer may be ■ made to the argument that the court could not direct the deed to be made to Dundas and Kugler after it had directed it to be made to Steed the purchaser when the sale was confirmed, because when it made the order for the deed to Steed, the whole subject was disposed of and it had no longer any power over it. It is not denied that the court might by some formal proceeding to which Steed was a party, have directed the deed to be made to the trustees for the land company on whose behalf he made the purchase, and that Steed’s rights were not duly respected is a matter of which third parties certainly cannot complain. It is not a question of jurisdiction but of the regularity of the mode in which the jurisdiction has been exercised; and if there be jurisdiction, whatever irregularities may have occurred in the course of the proceeding, the decree will yet be evidence, at least as against strangers in a subsequent collateral proceeding. That mere irregularities in a case of this kind, will not suffice to exclude the record as evidence in a subsequent controversy when offered by the party claiming under the sale has been expressly decided by this court *534 in Smith v. Chapman, 10 Gratt. 445, and it cannot be considered any longer an open question.
Nor is there any foundation, I think, for the objection that the deed made to Dundas and Kugler was void because made by one of the commissioners only who made the sale, both of whom it is said were required by law to unite in the conveyance to the purchaser. Thiá was a matter entirely within the control of the court. There was no absolute necessity for both commissioners to unite in the conveyance, and the court might require the duty of executing it to be performed by both or by one of them. The legal title was not vested in the commissioners requiring the deed of both to divest it; it remained in the commonwealth until transferred to the purchaser or those claiming by a conveyance executed by such commissioner as should be designated by the court. Chapman, the other commissioner had resigned his office before the order for the deed was made, and it was perfectly regular and proper for the court to direct the other commissioner to make it. And if he had resigned or died before performing that duty, I can see no reason whatever to doubt the power of the court to appoint some other person to perform that duty in his stead.
This last objection, and indeed most of those made under the first head, proceed from a too narrow and restricted view of the functions and powers of the court in a proceeding for the sale of forfeited lands. It is a statutory proceeding it is true, but from the whole frame and structure of the acts upon the subject, it is plain to my mind that it was intended to give to the court the general powers of the court of chancery in executing the duty thereby imposed and in carrying out the proceeding to all its just and legitimate results; and the fourth section of the act of *535 1837 (Sess. Acts, p. 10) expressly places the sales of those lands on the same footing as those of other lands directed to be sold by a decree of the court.
I think none of the objections urged against the admissibility of the proceeding for the sale of the land as forfeited, as evidence for the defendant in error in support of his claim, can be maintained; and without intending to say that it is absolutely such conclusive evidence of forfeiture either against those for whose default it was taken to be forfeited or against strangers, as to estop either in a subsequent suit from showing the contrary, I think it was clearly admissible as prima facie evidence at least of such forfeiture and as a link in the chain of the claimant’s title. Indeed the admissibility of such a proceeding as evidence to this extent was distinctly affirmed by this court in the case of Smith v. Chapman, already cited.
Whether the record of such a proceeding is to be regarded as on the footing of a judgment in rem and so conclusive as to forbid any attempt on the part of the former owner or any third person in a collateral proceeding, to show by proof that notwithstanding the report and decree of sale, the land was in fact not forfeited and not liable to sale, was the question sought to be raised by the second bill of exceptions, and is the basis of the second ground of error as above classified. It has never been decided by this court, for in the case of Smith v. Chapman, cited and relied on by the counsel for the defendant in error, it did not arise and was not decided nor intended to be decided. In that case the questions in relation to this subject were as to the admissibility of the record when it showed irregularities in the proceeding upon its face, and the supposed necessity devolving upon the party who offered it of showing that every thing was regular before he could have the benefit of it. There was no offer to show that the land in controversy was in point of fact not forfeited *536 when it was directed to be sold, and the precise question sought to be raised in this case did not and could not arise; and all that the court should be considered as having adjudicated in that case was that the existence of irregularities in the proceeding apparent on the face of the record would neither render it inadmissible as evidence nor as against strangers at least would impair the binding force and effect which it would have if free from such irregularities.
The question now sought to be raised is a grave and important one and will when properly presented,, doubtless receive the careful and deliberate consideration of this court. In this case however, I do not think it necessarily or properly arises. The bill of exceptions does not state what were the years for which the Nixons had caused the land to be entered on the books and had paid the taxes charged and the-damages. They of course only caused it to be entered' and the taxes paid for such and so many years, as they were advised they were required to enter and pay for in order to save the forfeiture. But whether they made their entry and payment for all the years in which the land had been omitted including the years from 1801 to 1814 inclusive (treating the entry for those years in the name of Lenox as invalid) or under their construction of the act of 1835 only made their entry for the years after 1814 when the previous laws declaring lands to be forfeited for failure to enter them on the books and to pay the taxes charged upon them, were repealed and the forfeitures accrued under them remitted, or for the years which followed after the conveyance to Morris or after his death wThen the supposed title of Maria Nixon accrued is left entirely uncertain. It may be inferred that they did not enter and pay for the years from 1801 to 1814 because the amount that would have been due for those years alone according to the cotemporaneous *537 assessment, with the damages, was one hundred and ninety-seven dollars and eighty-three cents, while they only paid for all the years embraced by their entry on the books, the sum of sixty-one dollars and fifty cents as the amount of all the taxes in arrear with the damages. Now it was not sufficient for the party to offer to prove payment of the taxes and damages which the Nixons considered to be in arrear. The years for which the entry and payment was alleged to have been made should have been shown in order that the court might see that proof of the entry and payment for those years would have been sufficient to save the forfeiture or at least would have been material and relevant when considered in connection with the proofs stated to have been previously given. Totally in the dark then as to the range of the proposed proof, this court cannot see that it would have been either the one or the other; and the subject therefore comes in too questionable a shape to be entitled to challenge the consideration and adjudication of this court. I think the court should decline to express any opinion at this time upon the question so imperfectly and doubtfully presented; and I feel the less hesitation in adopting this course because in my view as will appear in the sequel, the party will not be deprived of the benefit of the question if he can present it in a proper and available form.
It remains to consider the sufficiency of the declaration and verdict. The declaration alleges that the plaintiff was possessed in fee simple of a tract of land containing eleven hundred acres more or less, of which it gives the boundaries. It then alleges that the defendant entered into the said premises and unlawfully withheld from him (the plaintiff) the possession of two hundred acres in and adjacent to the watei’s of Hughes’ and Burnell’s runs, being a portion of the tract of eleven hundred acres. Our act, Code, ch. 135, *538 § 8, requires that in ejectment the premises claimed described in the declaration with convenient so that from such description, possession thereof may be delivered. Now in this declaration, I think there is clearly a want of that convenient certainty. Supposing that it is meant that the defendant entered into the part only, the two hundred acres, of which he is alleged to withhold the possession (although it would seem that the entry was into the whole tract) yet the portion so withheld is not described with sufficient precision. It is “ two hundred acres,” and it is “in and adjacent to the waters of” the two runs named. But that there are runs known by those names is only inferentially alleged, and if there be such streams within the boundaries of the eleven hundred acres, it must still be left in doubt of what land “in and adjacent to” their waters possession is to be delivered in case of judgment for the plaintiff. I think therefore the description lacks sufficient certainty and precision and that if a demurrer had been put into the declaration, it should have been sustained. There was, however, no demurrer, and the defect might have been cured by a verdict which did ascertain the subject with proper certainty and precision. Beverley v. Fogg, 1 Call 484; Lovell v. Arnold, 2 Munf. 167; Bolling v. Mayor of Petersburg, 3 Rand. 63. But the verdict found is obnoxious to precisely the same objection that applies to the declaration. It finds for the plaintiff an estate in fee simple in the land in the declaration mentioned, without stating in terms whether it was the whole tract or the two hundred acres only, and if the latter was meant, without specifying the boundaries or referring to any plat on which it was designated or describing it otherwise than by reference to the declaration. There is therefore no more certainty and precision in the verdict than there is in the declaration, and the defect in *539 the latter is not cured by the former. The judgment is according to the verdict, and they no more or better enable the officer to deliver possession of the subject recovered than the declaration itself.
I think therefore the court should not have rendered any judgment upon the verdict but should have set it aside and required the parties to plead de novo ; and I am of opinion to reverse the judgment and remand the cause to the Circuit court with directions to set aside the verdict and the pleadings and to award a repleader.
The other judges concurred in the opinion of Lee, J.
Judgment reversed.